Craig A. Crispin, OSB No. 824852
crispin@employmentlaw-nw.com
Ashley A. Marton, OSB No. 171584
ashley@employmentlaw-nw.com
**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770
Fax: 503-293-5766
    Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **JACK B. ROY,** an individual, | Case No. 3:18-cv-01695-YY |
| Plaintiff, | |
| v. | |
| **LABORERS' LOCAL 737,** a domestic nonprofit mutual benefit corporation, and **ZACKARY CULVER,** an individual, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   PLAINTIFF'S MOTION TO STRIKE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

      A.    Defendants' Evidence Fails to Establish Local 737's Employee
           Count . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

          1.    Defendants Have Improperly Applied the "Payroll Method" 10

          2.    Defendants' Records Demonstrate that Local 737 is an
              "Employer" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

          3.    Defendants Fail to Address Each of the Relevant
              Calendar Years . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

      B.    Defendant Culver is Personally Liable . . . . . . . . . . . . . . . . . . . . . .  14

      C.    Plaintiff Has Established That Multiple Material Facts Preclude
           Judgment on his Age Discrimination Claims . . . . . . . . . . . . . . . . . .  18

          1.    Plaintiff has Established the Prima Facie Case . . . . . . . . . . .  18

          2.    Direct Evidence is Sufficient to Deny Defendants' Motion  .  20

          3.    Plaintiff's Indirect Evidence is Sufficient to Deny Defendants'
              Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

          4.    The Evidence of Pretext is Compelling . . . . . . . . . . . . . . . . .  23

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

# TABLE OF AUTHORITIES

*Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 640 (5th Cir.1985) . . . . . . . . . 1

*France v. Johnson,*
795 F.3d 1170, 1175, 1177 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015) . . . . . . . . . 2, 25

*Taybron v. City & Cnty. of S.F.,* 341 F.3d 957, 959 n. 2 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 2

*Chuang v. Univ. of Cal. Davis, Bd. of Trs.,*
225 F.3d 1115, 1124, 1129 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20, 23

*Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1028 (9th Cir. 2001) . . . . . . . . . . . 3

*Arjangrad v. JPMorgan Chase Bank, N.A.,* 2012 WL 1189750 (D. Or. Apr. 9, 2012) . . . . . . . . 3

*Alexander v. Eye Health NW., P.C.,* 2006 WL 2850469 (D. Or. Oct. 3, 2006) . . . . . . . . . . . . . . 3

*Marra v. Philadelphia Housing Auth.,* 497 F.3d 281, 307-08 (3d Cir. 2007). . . . . . . . . . . . . . . 3

*Olson v General Elec. Astrospace,* 101 F. 3d 947, 955 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . 3

*Aka v Washington Hosp. Center,*
116 F.3d 876, 889 n.9 (D.C. Cir. 1997), *aff'd en banc,* 156 F.3d 1284 (1998) . . . . . . . . . . . . . 3

*Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1477 (9th Cir.1995) . . . . . . . . . . 5, 21

*Plummer v. Western Int'l. Hotels Co.,* 656 F.2d 502, 505 (9th Cir.1981) . . . . . . . . . . . . . . . . . . 8

*Heyne v. Caruso,* 69 F3d 1475, 1483 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Beachy v. Boise Cascade Corp.,* 191 F.3d 1010, 1014-16 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . 8

*Walters v. Metro. Educ. Enter., Inc.,* 519 U.S. 202, 205, 206 n.* (1997) . . . . . . . . . . . 9, 10, 12

*Clackamas Gastroenterology Assocs., P. C. v. Wells,* 538 U.S. 440, 441 n.1 (2003) . . . . . . . . 10

*Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971,*
60 F.3d 1375, 1383 (9th Cir 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Childs v. Electrical Workers, et al.,* 719 F.2d 1379 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . 13

*Komorowski v. Townline Mini-Mart and Restaurant,* 162 F.3d 962, 965 (7th Cir. 1998) . . . . . 14

*In the Matter of Crystal Springs Landscapes, Inc.*, 32 BOLI 144, 166 (2012) . . . . . . . . . . . . . 15

*In the Matter of Dr. Andrew Engel, DMD, PC*, 32 BOLI 94, 137 (2012) . . . . . . . . . . . . . . . . . 15

*White v. Amedisys Holding, LLC*, 2012 WL 7037317, at *5-6 (D. Or. Dec. 18, 2012) . . . . . . . 16

*Hannan v. Business Journal Publications, Inc.*, 2015 WL 9265959 (D. Or. Oct. 2, 2015) . . . . 17

*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889, 891 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . 18, 19

*Diaz v. Eagle Produce Ltd. Partnership,* 521 F.3d 1201 (9th Cir. 2008) . . . . . . . . . . . . . . . . . 18

*O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312 (1996) . . . . . . . . . . . . . . . . . . . 18

*Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 19

*Merrick v. Hilton Worldwide, Inc.,* 867 F.3d 1139, 1146 (9th Cir. 2017) . . . . . . . . . . . . . . . . . 19

*Connecticut v. Teal,* 457 U.S. 440, 455 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Enlow v. Salem-Keizer Yellow Cab Co., Inc.,* 389 F.3d 802, 812 (9th Cir. 2004) . . . . . . . . . . 20

*Hartung v. Cae Newnes, Inc.,* 229 F. Supp. 2d 1093, 1100 (D. Or. 2002) . . . . . . . . . . . . . 20, 21

*Lam v. University of Hawaii,* 40 F.3d 1551, 1561 n.16 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . 20

*Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir.1990) . . . . . . . . . . . . . . . . . 21

*Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.,*
927 F. Supp. 2d 1030, 1053 (D. Or. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1096 n.5 (3d Cir. 1995) . . . . . . . . . . . . 21

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) . . . . . . . . . . . . . . . . 21, 22, 23

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26

*Humphries v. CBOCS West, Inc.,*
474 F.3d 387, 407 (7th Cir. 2007), *aff'd on other grounds,* 128 S. Ct. 1951 (2008) . . . . . . . . . 23

*Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 414-415 (6th Cir. 2008) . . . . . 23

*Heaton v. The Weitz Co., Inc.,* 534 F.3d 882, 890-891 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . 24

ii

*Fonseca v. Sysco Food Services of Arizona, Inc.,* 374 F.3d 840, 850 (9th Cir. 2004) . . . . . . . . 24

*Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1210 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 24

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Davis v. Team Elec. Co.,* 520 F.3d 1080, 1091 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Smith v. Chrysler Corp.,* 155 F.3d 799, 807-08 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 24

*EEOC v. Sears Roebuck & Co.,* 243 F.3d 846, 850-854 (4th Cir. 2001) . . . . . . . . . . . . . . . . . 24

*Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1030 (9th Cir.2006) . . . . . . . . . . . . 25

*Desert Palace, Inc. v. Costa,* 539 U.S. 90, 99-100 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1112 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 25

*Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 572–74 (6th Cir. 2003) . . . . . . . . . . . . 26

*Waldron v. SL Indus., Inc.,* 56 F.3d 491, 496 n.6 (3d Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . 26

Craig A. Crispin, OSB No. 824852
crispin@employmentlaw-nw.com
Ashley A. Marton, OSB No. 171584
ashley@employmentlaw-nw.com
CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770
Fax: 503-293-5766
        Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **JACK B. ROY,** an individual, | Case No. 3:18-cv-01695-YY |
| Plaintiff, | |
| v. | |
| **LABORERS' LOCAL 737,** a domestic nonprofit mutual benefit corporation, and **ZACKARY CULVER,** an individual, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

## I. INTRODUCTION

Defendants' motions for summary judgment fail to establish a right to judgment and the

absence of material issues of fact. Summary judgment is usually considered an inappropriate tool

for resolving employment discrimination cases because the claims involve "nebulous questions

of motivation and intent." *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 640

(5th Cir.1985).

Page 1 – **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION
        FOR SUMMARY JUDGMENT**

CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

"The district court may not weigh the evidence at the summary judgment stage but should focus on whether there are any triable issues of fact." *France v. Johnson,* 795 F.3d 1170, 1177 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015), *citing Taybron v. City & Cnty. of S.F.,* 341 F.3d 957, 959 n. 2 (9th Cir. 2003).

"As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1124 (9th Cir. 2000).

Under these standards, defendants' motions should be denied in their entirety.

## II. PLAINTIFF'S MOTION TO STRIKE

Plaintiff Moves to strike the following matters from defendants' brief, with reasons supporting such motions. L.R. 56-1(b). The parties have made a good faith effort through personal or telephone conference to resolve the dispute and have been unable to do so. L.R. 7-1(a)(1)(A).

Plaintiff moves to strike defendants' use of and argument regarding testimony subject to objection by plaintiff. Defendants have included in their moving papers multiple instances of testimony taken over objection. These include questions of matters of law, questions calling for speculation and matters outside the personal knowledge of plaintiff, and questions attempting to solicit "admissions" about the evidence supporting his claims.

Regarding the latter, at multiple instances within defendants' brief, they improperly attempt to claim that plaintiff has *admitted* something by his testimony to the effect that he "has no reason to believe otherwise." These references, the related testimony, and argument based on

CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

them should be stricken. A party's subjective belief in whether he (or another party) possessed an unlawful motive neither creates nor destroys a genuine issue of material fact. *See, e.g., Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1028 (9th Cir. 2001). The issue is whether the evidence, when viewed in a light most favorable to the nonmoving party, creates a genuine issue, not how one party subjectively interprets that evidence herself.

In *Arjangrad v. JPMorgan Chase Bank, N.A.,* 2012 WL 1189750 (D. Or. Apr. 9, 2012), this Court noted that "responses to questions in deposition do not limit the scope of employment claims because evidence of discriminatory animus may be demonstrated by many sources besides a plaintiff's own observations" In *Alexander v. Eye Health NW., P.C.,* 2006 WL 2850469 (D. Or. Oct. 3, 2006), the court examined the same argument urged by defendants here that because the plaintiff testified that she personally had no evidence that her termination was the result of discriminatory reasons the employer was entitled to summary judgment. In rejecting the argument, the court noted that counsel, not the individual plaintiff, is the one to identify facts demonstrating a violation of law. "She is still permitted through counsel to attempt to develop evidence from which it could be inferred that Eye Health discharged her because she took leave, rather than because she failed to return to work when her leave had expired as argued by the defendant." *Id.* at *6. *See also Marra v. Philadelphia Housing Auth.,* 497 F.3d 281, 307-08 (3d Cir. 2007); *Olson v General Elec. Astrospace,* 101 F. 3d 947, 955 (3d Cir. 1996), *Aka v Washington Hosp. Center,* 116 F.3d 876, 889 n.9 (D.C. Cir. 1997), *aff'd en banc,* 156 F.3d 1284 (1998) (the plaintiff's inability to personally recite all the evidence in her testimony doesn't negate it); *Carmen v S.F. Unified S.D.,* 237 F.3d 1026, 1028 (9th Cir. 2001).

CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

The following record evidence, provided by Ex. 1 of the Yen Declaration, and argument related thereto, should therefore be stricken:

a.      Yen Decl. Ex. 1 at 28, Tr. 60:23-61:22 (purported admission)

b.      Yen Decl. Ex. 1 at 33, Tr. 69:20-70:13 (purported admission)

c.      Yen Decl. Ex. 1 at 35, Tr. 71:7-14 (purported admission)

d.      Yen Decl. Ex. 1 at 32. Tr. 68:20-69:9 (legal conclusions)

### III. STATEMENT OF MATERIAL FACTS

Jack Roy, plaintiff herein, was employed by defendant Local 737 or its predecessor local for many years. At the time of his termination, he worked in the position of organizer for the local. Throughout his employment, Roy performed his duties without criticism.

Throughout the last several years of his employment, however, he was repeatedly subjected to comments about his age and the age of other older employees. For example, defendant Culver, Business Manager/Secretary Treasurer of defendant Local 737, repeatedly introduced plaintiff Roy as, "The old guy." J. Roy Tr. 39:10-18. Vice President Greg Held, an Executive Board member, asked Roy, "When are you going to retire? You're getting old." J. Roy Tr. 39:25-40:14. See Culver Tr. 22:14-23 (Identifying Held as "Business manager/ secretary-treasurer of the Oregon & Southern Idaho District Council of Laborers. He was also on our executive board as a * * * Vice president.").

In 2017, while Roy was assisting in removing snow and ice from the Local 737 parking lot, Roy reported that Held stated, "'Watch out,' you know. Jack's – Jack's old," or "He's old.

Page 4 – PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT

CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

Check to see he's okay." J. Roy Tr. 43:7-14, 44:1-7.[1]

It was also reported that in a conversation with Bob Abbott, Vice President of the Laborers' International Union of North America and the Regional Manager of the Northwest Region, and Supervisor of Local 737 from October 2015 to February 2017, Abbott Decl. ¶¶ 2, 12, Held commented, "I gotta get rid of Jack. He's too old," to which Abbott responded, "You better figure out a way to do it correctly, and -- do it -- do it where you can get rid of him without the membership being pissed." J. Roy Tr. 129:13-21.[2] This conversation took place soon before defendants terminated Roy. J. Roy Tr. 130:4-6.

Defendants claim Culver was the decision-maker in the termination of Mr. Roy. Deft's Memo at 5. Regardless whether that is true, it is clear his input was a motivating factor in the decision to terminate. In addition to repeatedly introducing Mr. Roy as "the old guy," he informed plaintiff that plaintiff was being replaced as Recording Secretary because Culver assumed he was not computer savvy.[3] *See Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1477 (9th Cir.1995) (rejecting argument that remarks such as "older employees, unfortunately don't take advantage of all the opportunities" were but stray remarks.)

Also, when Mr. Roy expressed his intent to run for Local President, Culver told Roy not to do so allegedly because "We're going a different direction," and when Mr. Roy pressed him

---

[1] See generally J. Roy Tr. 42:24-44:15.

[2] Although plaintiff did not hear the comments directly, they are admissible pursuant to FRE 801(d)(2)(A), (B), & (D) as an Opposing Party's Statement.

[3] Mr. Roy testified, "I did a phenomenal job for and was told that we're going into the -- he -- 'We're going into the age of putting it on computer,' and, you know, 'You like writing on paper.' I was never given the chance to do that." J. Roy Tr. 69:25-70:6.

CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

about whether his age was the reason he should not run, Culver became frustrated and refused to answer. J. Roy Tr. 75:12-21, 76:7-20.

Mr. Roy eventually tired of Culver's calling him "the old guy," and he protested the age-related comments. Although Culver stopped referring to Roy as "the old guy" for "a little while," he soon resumed. J. Roy Tr. 80:5-16, 80:20-81:5.

Over the years 2016 and 2017, at virtually every monthly union meeting, Held and Culver made a point of calling for "younger guys" in the union. J. Roy Tr. 39:25-40:25, 42:3-8.

Defendants claim they terminated Roy because he accepted an item of value from a contractor's job site.[4] The contention is belied by the fact that two of the Executive Board members involved had themselves been involved in directly taking items of value from job sites. Gary Moore, President/Business Agent at the time,[5] gathered scrap lead from a hospital construction job site, enlisted plaintiff to assist him, and made fishing weights from the lead for his personal use. Moore Tr. 16:12-17:15. Moore told Roy that he had permission from the contractor to take the large amount of material – so much so that he required a fork lift to load it into his truck[6] – of value from the job site. Moore Tr. 17:23-25. Moore was never disciplined for taking the material from the contractor. Moore Tr. 18:5-7.[7]

---

[4] The contention that Roy took an item from the contractor's job site is false, as will be shown below.

[5] J. Roy Tr. 57:10-15.

[6] J. Roy Tr. 58:1-5.

[7] Moore was a member of the Executive Board attending the so-called hearing approving plaintiff's termination. Moore Tr. 18:11-15, Ex. 29.

Page 6 – **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Similarly, Vice President and Executive Board member Greg Held acquired pipe from a job site, had union members cut it to his specifications, and had Roy deliver it to him to use in fabricating a fireplace ring. J. Roy Tr. 59:5-13, 59:22-60:1.

The contention that Jack Roy took an item of value from a contractor's job site is false. Jack Roy's son, Dylan Roy, worked for Walsh Construction, a contractor as a craft worker and a Laborer Apprentice. His supervisor was job Superintendent, Howie Petker. Dylan Roy Decl. ¶ 2. As the project neared completion, Petker provided all craft workers with the opportunity to take products that were going to be disposed of following completion of the project. Petker gave Dylan Roy permission to take several air conditioning and heating units from the job site. *Id.*

Dylan Roy mentioned the gift of the units to his father, who knew that the union secretary, Misty Dionne, was having heat problems in her home and suggested she might benefit from one of the units. J. Roy Tr. 25:7-13. Dylan Roy decided to lend one of the units to the secretary and met Jack Roy off the job site in a nearby housing development and moved one of the units into plaintiff's truck. Dylan Roy Decl. ¶¶ 3-4. J. Roy Tr. 22:4-8. At no time did Dylan Roy intend to relinquish ownership of the unit to his father or to Ms. Dionne. *Id.* ¶ 5.

After moving the unit, Dylan Roy and Jack Roy returned to the Superintendent's job shack, where plaintiff checked in before visiting the job site as part of his job duties. J. Roy Tr. 26:6-15. While there, Dylan Roy asked about instructions for the AC Unit, and Mr. Petker provided him with an instruction manual. Dylan Roy Decl. ¶ 6; J. Roy Tr. 29:22-30:7.

A couple weeks later, on April 17, 2017, defendants falsely accused Roy of taking equipment from a contractor and called him into a meeting, where Culver told Roy he was

terminated. No investigative interviews occurred, and during the termination meeting, plaintiff was given no opportunity to explain. J. Roy Tr. 37:21-38:4; Tr. 63:19-25.

A week later, defendants convened what they termed a "Trial Board" to address Roy's termination. After a discussion that lasted all of *9 minutes*, the Board met, *along with Culver*, and decided to terminate. Moore Tr. 18:20-19:4, Ex. 29 (reflecting start time of 10:00 a.m. and concluding time of 10:09 a.m.; Ex. 29 at 3 & 12.)

On June 26, 2017, Roy filed a complaint with the Oregon Bureau of Labor, Civil Rights Division and co-filed with the EEOC. Following investigation, the Civil Rights Division issued a Notice of Substantial Evidence Determination dated April 19, 2018, finding as follows:

> The Bureau of Labor and Industries, Civil Rights Division, finds SUBSTANTIAL EVIDENCE OF AN UNLAWFUL EMPLOYMENT PRACTICE (discriminatory terms and conditions, and termination) based on age, in violation of ORS .659A.030.

> The Bureau of Labor and Industries, Civil Rights Division, finds SUBSTANTIAL EVIDENCE OF AN UNLAWFUL EMPLOYMENT PRACTICE (aiding and abetting unlawful employment practices) based on age, in violation of ORS 659A.030.

Crispin Decl. ¶ 5, Exhibit 4.[8]

---

[8] Recognizing the probative value of agency determinations, the Ninth Circuit has adopted a *per se* rule that "a plaintiff has a right to introduce an EEOC probable cause determination in a Title VII lawsuit, regardless of what other claims are asserted, or whether the case is tried before a judge or jury." *Plummer v. Western Int'l. Hotels Co.,* 656 F.2d 502, 505 (9th Cir.1981). This same rule applies not only to EEOC findings, but also to "similar administrative determinations," such as BOLI findings. *See Heyne v. Caruso,* 69 F3d 1475, 1483 (9th Cir. 1995) (probable cause finding by the Nevada Equal Rights Commission held admissible under Plummer). The opposite, admission of a "no substantial evidence" determination is generally not admissible. *See Beachy v. Boise Cascade Corp.,* 191 F.3d 1010, 1014-16 (9th Cir. 1999).

CRISPIN EMPLOYMENT LAW PC
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

## IV. ARGUMENT

A.  **DEFENDANTS' EVIDENCE FAILS TO ESTABLISH LOCAL 737'S EMPLOYEE COUNT**

The Age Discrimination in Employment Act ("ADEA"), which limits age discrimination in employment, applies only to an entity "engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year * * *." 29 U.S.C. §§ 623, 630(b). The "current calendar year" refers to the year in which the discrimination occurred; thus, the relevant time period for the employee-numerosity inquiry consists of both the year in which the alleged violation took place as well as the year prior. *See, e.g., Walters v. Metro. Educ. Enter., Inc*., 519 U.S. 202, 205 n.* (1997) (reasoning that for purposes of a discrimination claim that occurred in September 1989, the relevant years for which defendant could qualify as an employer were 1988 and 1989, and, for purposes of retaliation which happened in 1990, the relevant years were 1989 and 1990).

Defendant Local 737 argues, with respect to plaintiff's federal claim contained in Count One, that it does not meet the definition of an "employer" within the meaning of the ADEA because it did not have enough employees during the relevant time period. Defts' Memo at 6. Defendant's motion fails because their papers demonstrate a wholesale misinterpretation of the "payroll method" for determining the number of employees under the definition of "employer" for purposes of 29 U.S.C. § 630. As such, they fail to count a substantial number of their employees. Nor have they addressed each of the relevant calendar years ("current or preceding calendar year," *i.e.,* for this case, 2015, 2016 and 2017).

**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

At a minimum, substantial and material questions of fact regarding the number of employees engaged by defendants remain, which must be resolved by the trier of fact.

### 1.    Defendants Have Improperly Applied the "Payroll Method"

The "payroll method" is a starting point for determining the number of employees, since "the employment relationship is most readily demonstrated by [...] the employer's payroll." *Walters v. Metropolitan Educational Enterprises, Inc*., 519 U.S. 202, 206 (1997). The critical issue is "whether the employer has employment relationships," not whether employees necessarily appear on the payroll. *Id*. at 211. The court in *Walters* upheld the EEOC's interpretation of the payroll method, finding that an employer "has" an employee if it maintains an employment relationship on the day in question whether or not the employee is actually being compensated for that day. *Id*. at 208-09.

The Court in *Walters* specifically considered the employment of intermittent or part time employees. The defendant in *Walters* argued that an employee should only be counted if they work at least one hour each workday of the calendar week, as a contrary interpretation would provide that "an employee who works irregular hours, perhaps only a few days a month, will be counted toward the 15–employee minimum for every week in the month." *Id.* at 210 (relevant employee count for Title VII claim there at issue[9]). The court rejected this argument. *Id.* Instead, "Under the interpretation we adopt * * * all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so,

---

[9] See *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 441 n.1 (2003) (holding applicable to ADEA).

when." *Id.* at 211. The employee is then "counted as an employee for each working day after arrival and before departure." *Id.*

Defendants failed completely to present evidence of initial start dates, departure dates, or the existence of employment relationships during each calendar week. Zackary Culver described the individual's defendant Local 737 employed, as follows:

> Q    So what roles -- you've mentioned stewards, field agents, organizers. Other than those three roles, what other roles of employees exist in the Local 737?
>
> A    So we have a dispatcher and office staff as well that I supervise, and I oversee the hiring and all procedures there.
>
> Q    Okay. So I've got stewards, field agents, organizers, dispatcher, and office staff. Is that everybody, besides yourself?
>
> A    Yes.

Culver Tr. 12:5-15.

Culver went on to describe how payroll was completed:

> Q    So what -- how does the payroll work for Local 737? And I'll explain that question a little bit more. Is there someone internally that calculates the wages and prints the checks? Or, you know, a lot of people use ADP or paycheck services. How does it work at the local?
>
> A    So we use QuickBooks payroll service.
>
> Q    And so that's done in-house?
>
> A    Yes.
>
> Q    Has that been online QuickBooks payroll service or a local?
>
> A    So we have -- we had online payroll service one year, did not like it, went back to the desktop version of QuickBooks, and we do the payroll service through the desktop version.

Culver Tr. 29:5-19

Page 11 – **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

The method utilized by Local 737, according to Culver's description, was to utilize QuickBooks payroll services either online or through a local desktop application. *Id*. Defendants have failed to produce the specific payroll documents in support of their motion. Rather, the payroll documents used in Culver's deposition demonstrate that more than 20 people were employed during several weeks in 2017. Culver Tr. 110:8-11, 111:17-25, Exhibits 17 and 18. Moreover, the Form 132 (Quarterly Taxes) documents attached to Culver's Declaration also fail to demonstrate weekly employee counts but rather show the monthly and quarterly totals. Culver Decl. Exs. 1-8. This fails to take into account employees who were in employment relationships for individual calendar weeks. It is not relevant whether an employee received compensation on a particular day or in a particular week, only that the employment relationship existed for those periods. *Walters*, 519 U.S. at 208-09. Local 737 failed accurately to count all of the employees who were in ongoing employment relationships with the company.

### 2.    Defendants' Records Demonstrate that Local 737 is an "Employer"

The 2017 Form 132 Quarterly Reports, which were attached to defendants' motion as Culver Declaration Exs. 1-8, demonstrate several months during that year wherein Local 737 employed more than 20 employees. Culver Decl. Exs. 1-7. For example, Culver Decl. Ex. 5 shows that in the third month of 2017 First Quarter, defendant reported 20 employees. See Dkt. 35-5, pg. 2. Culver Decl. Ex. 6, shows that in the first and second months of the Second Quarter of 2017, defendant Local employed 20 employees. Dkt. 35-6, pg. 2. Culver Decl. Ex. 7, shows that in the First, Second and Third Month of the Third Quarter of 2017, defendant employed 21, 21, and 24 employees respectively. Lastly, Culver's Decl. Exhibit 7, shows that in the first and

second month of the Fourth Quarter of 2017, defendant employed 24 and 21 employees respectively. Taken together, these records generate a substantial material question of fact over defendant Local's contention that it did not employ the requisite number of employees during the relevant period.

Additionally, defendants cite a single case to argue that the international union's employees that are not employees of the local union do not count toward the 20-employee threshold. Defts' Memo at 7, *citing Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1383 (9th Cir 1995). In *Herman,* the Court analyzed the facts to hold, in that particular case, that the international union did not meet the four-part test stated in *Childs v. Electrical Workers, et al*., 719 F.2d 1379 (9th Cir. 1983).[10] Here, defendant Local fails to provide any analysis about whether LiUNA meets the *Childs's* definition. For this reason alone, defendant Local's motion has not adequately established that the international union LiUNA should not be counted towards the employee count.

### 3.    Defendants Fail to Address Each of the Relevant Calendar Years

To prevail on a motion for summary judgment on plaintiff's federal claim based on number of employees, defendant Local would have had to establish an insufficiency of employees for each year for which plaintiff alleges liability, plus the preceding calendar year. 29 U.S.C. § 630 In this case, those years are 2015, 2016, and 2017.

---

[10]  In *Childs v. Electrical Workers, et al.,* 719 F.2d 1379 (9th Cir.1983), the 9th Circuit adopted a four-part test to determine whether two employing entities constitute a single employer for purposes of Title VII. *Id.* at 1382. The factors to be considered are: (1) inter-relation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Id.*

Page 13 – **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION**
**FOR SUMMARY JUDGMENT**

**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

The "current calendar year" as it is used within the Title VII definition of "employer", which is similar to the ADEA requirement, refers to the year in which the alleged violation occurred. *Komorowski v. Townline Mini-Mart and Restaurant*, 162 F.3d 962, 965 (7th Cir. 1998) (finding that, where discrimination occurred in 1996, the relevant years for determining employer status are 1996 and 1995). The calendar year runs from January 1 to December 31 in the year the discrimination occurred, rather than the first full calendar year following the discrimination. *Id.*

Plaintiff's complaint alleges that he was discriminated against in the terms and conditions of his employment as well as in his termination. Complaint ¶ 29, Dkt No. 1. He has described discriminatory comments and actions against him starting in 2016 and continuing into 2017, including repeated references to him as "the old guy," to wanting "younger * * *; and to "Watch out for Jack. He's old," such comments described herein above and elsewhere. As such, the relevant years for determining Local 737's employer status are 2015, 2016, and 2017. If Local 737 had the requisite number of employees for 20 calendar weeks during any of these years, Local 737 is within the definition of an "employer" for purposes of plaintiff's claims.

The declarations submitted by defendants, and indeed defendants' motion, make no reference to the number of Local 737 employees during the year 2015. While defendants have submitted evidence, though insufficient, for calendar years 2016 and 2017, they have failed to offer any evidence regarding employees in an employment relationship in 2015. As such, their motion should be denied due to lack of evidence for a relevant year.

**B.    DEFENDANT CULVER IS PERSONALLY LIABLE**

**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

ORS 659A.030(1)(g) provides that it is an unlawful employment practice "[f]or any person, whether an employer or an employee, to aid, abet ... the doing of any of the acts forbidden under this chapter or to attempt to do so." Aiding and abetting, in the context of an unlawful employment practice, means "to help, assist, or facilitate the commission of an unlawful employment practice, promote the accomplishments thereof, help in advancing or bring it about, or encourage, counsel or incite as to its commission." *In the Matter of Crystal Springs Landscapes, Inc.*, 32 BOLI 144, 166 (2012); *In the Matter of Dr. Andrew Engel, DMD, PC,* 32 BOLI 94, 137 (2012).

In analyzing claims brought under ORS 659A.030(l)(g), it is important to consider the entire statute and not just the terms "aid" and "abet" in it. In its entirety, that statute provides that it is an unlawful employment practice "[F]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." ORS 659A.030(l)(g).

Here, plaintiff's retaliation and aiding and abetting claim seeks to hold the individual defendant, Zackary Culver, directly liable based on his own conduct. The facts discussed above show that Culver aided and abetted in Local 737's violation of state and federal law by participating in the discriminatory termination of plaintiff. It cannot be disputed that Culver was an individual involved in the recommendation to terminate plaintiff. Culver Tr. 56:23-57:3, and through a process involving a hearing at the Local level (lasting 9 minutes) and review of the termination by the International Union. Culver Tr. 90:20-91:7, Depo Ex. 3.

Defendants' primary actor argument fails because Culver was not the only actor involved

in the decision to terminate plaintiff's employment. In *White v. Amedisys Holding, LLC*, 2012 WL 7037317, at *5-6 (D. Or. Dec. 18, 2012), this Court held that the plaintiff had alleged sufficient facts to demonstrate that the supervisor could potentially be found liable for aiding and abetting the employer's unlawful employment discrimination and retaliation. *Id.* at *6. The court distinguished between employees who are legally equivalent to an employer, such as a president or sole proprietor, and those who are merely supervisors:

> [I]t must be recognized that any employment discrimination and retaliation by [the supervisor] against [the plaintiff] in the form of unwarranted discipline or termination was done not to benefit herself, but was done on behalf of and within the course and scope of her employment for the employer * * *. A corporate entity * * * can be held liable for committing unlawful employment practices against its employees * * * based only on the actions of its agents and employees acting on its behalf, such as [the supervisor].

*Id.* at *5.

The Court distinguished the aider and abettor from the *employer* or *one standing in the shoes of the employer*.

> The situation is different if the employee is legally equivalent to the employer, as in a sole proprietorship or arguably when [the president of a company is] exercising 'executive authority' * * * *. But if the employee is simply acting on behalf of a separate and distinct employing entity, then he or she could well aid, abet, compel or coerce that employer's unlawful employment practices. The statute's reference to both employers and employees, without further qualification, supports this broad reading.

*Id.*

Here, it cannot be disputed that other management level employees at Local 737 or LiUNA were involved in the decision to terminate plaintiff. Culver testified that he recommended the termination of Mr. Roy's employment. Culver Tr. 57:2-3. But others were

involved in the decision to move forward with the termination. Culver Tr. 57:6-24. Indeed, after

Culver learned of the situation involving plaintiff's possession the air conditioning unit, he

reached out to Mr. Abbott, a LiUNA manager, and discussed the termination. Culver Tr. 57:6-8.

Culver did not immediately decide to terminate; indeed, he got permission from Abbott to do so,

who gave him detailed instructions. Culver Tr. 73:1-74:9.

> Q    And what's the next thing that happened that you
> eventually contributed to the decision to terminate -- or did
> you make the decision to terminate right there? Just the
> second question. I know there's two of them, so –
>
> A    No.
>
> Q    Okay. So you did not make the decision to terminate. What
> was the next thing that happened that led in any way to the
> termination of Mr. Roy?
>
> A    So I -- I did consult with Bob Abbott over the issue and
> asked him -- you know, to clarify that I was -- that I was
> making the right decision. And he informed me that I was
> going to have to terminate his employment, based on the
> knowledge of the -- what was there.

Culver Tr. 61:7-22.

Culver also spoke to Greg Held, who would be a witness at the termination meeting.

Culver Tr. 66:22-67:25. Plaintiff had complained about Mr. Held's treatment of him in the past.

*Id.* Even if Culver's admission that he was not the decision maker and received significant input

from a superior does not require denial of defendants' motion, a serious material issue of fact

whether he was the sole decision maker distinguishes this case from that of *Hannan v. Business*

*Journal Publications, Inc.,* 2015 WL 9265959 (D. Or. Oct. 2, 2015), relied on by defendant in

their motion. Defts' Memo at 8.

Page 17 – **PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT**

**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

Consequently, given the ultimate question of fact whether Culver was or was not acting

on his own as plaintiff's employer in causing plaintiffs termination from Local 737, Culver is not

entitled to summary judgment on plaintiff's claim against him under ORS 659A.030(l)(g).

**C.    PLAINTIFF HAS ESTABLISHED THAT MULTIPLE MATERIAL FACTS PRECLUDE JUDGMENT ON HIS AGE DISCRIMINATION CLAIMS**

### 1.    Plaintiff has Established the Prima Facie Case

"The requisite degree of proof necessary to establish a prima facie case for * * * ADEA

claims on summary judgment is minimal and does not even need to rise to the level of a

preponderance of the evidence." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994).

Defendants argue that plaintiff has not established the elements of his prima facie case.

They state only one formulation of the prima facie elements in an age discrimination case.

Defendants suggest, though do not explicitly state, that the only way plaintiff can establish a

prima facie case of age discrimination is to show that he was replaced by a younger employee.

Defts' Memo at 11, 12. While showing a younger replacement is certainly *one way* to

demonstrate a prima facie case, it is not the only way.[11]

In *Diaz v. Eagle Produce Ltd. Partnership,* 521 F.3d 1201 (9th Cir. 2008), the court

noted that a plaintiff can make out a prima facie case by showing he "was (1) at least forty years

old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially

younger employees with equal or inferior qualifications *or discharged under circumstances*

*otherwise 'giving rise to an inference of age discrimination.'" Id.* at 1207–08 (emphasis added)

---

[11] See generally "Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case." *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312 (1996).

(*quoting Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000).

Here, the facts of multiple and repetitive age-specific comments and other evidence of age-specific conduct demonstrates circumstances otherwise giving rise to an inference of age discrimination. Moreover, defendants admit that "Local 737 did not hire anyone to replace Plaintiff as Organizer or Lead Organizer," Defts' Memo at 5, but distributed his duties to existing employees. When a terminated employee is not replaced, "Instead of showing proof of replacement, a plaintiff may establish a prima facie case of discrimination by showing "through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 891 (9th Cir. 1994). "Such an inference may be established by demonstrating that an 'employer had a continuing need for [the plaintiff's] skills and services in that [his] various duties were still being performed.'" *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000) (*quoting Wallis,* 26 F.3d at 891). *See also Merrick v. Hilton Worldwide, Inc.,* 867 F.3d 1139, 1146 (9th Cir. 2017)

As well, defendants attempt to argue that plaintiff has not made out a prima facie case by claiming, contrary to their fact statement otherwise, that "eventually," they assigned duties to an individual also within the protected class. Defts' Memo at 5; Culver Decl. ¶ 31. This argument is unavailing because this reassignment almost certainly occurred after plaintiff had already raised serious accusations of age discrimination by his complaint filed with the Bureau of Labor and EEOC on June 26, 2017, just a few weeks after his termination. See Defts' Memo at 6.

"It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other

members of the employees' group." *Connecticut v. Teal,* 457 U.S. 440, 455 (1982). This is particularly true when the favorable treatment of members of the same class, or unfavorable treatment of members outside of the class *occur subsequent to the plaintiff's termination. Chuang v. Univ. of California Davis,* 225 F.3d 1115, 1129 (9th Cir. 2000).[12]

### 2.     Direct Evidence is Sufficient to Deny Defendants' Motion

Defendants devote argument in an effort to show that plaintiff's multiple examples of specific discriminatory comments based on plaintiff's age do not establish direct evidence of discrimination. In the face of substantial evidence of repeated age-discriminatory comments by Culver, and similar comments by Held and Abbott, all high-level union managers, it is difficult to see more compelling direct evidence of the age bias held by these individuals, all involved intimately in the decision to terminate plaintiff Roy.

"Direct evidence, in the context of an ADEA claim, is defined as 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude * * * sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" *Enlow v. Salem-Keizer Yellow Cab Co., Inc.,* 389 F.3d 802, 812 (9th Cir. 2004) (internal quotation marks omitted)). Similarly, in *Hartung v. Cae Newnes, Inc.,* 229 F. Supp. 2d 1093, 1100 (D. Or. 2002), the court found a comment by plaintiff's supervisor that he was "too old" to work at the company, combined with other age-based comments, was direct evidence of discrimination.

---

[12] "Given the obvious incentive in such circumstances for an employer to take corrective action in an attempt to shield itself from liability, it is clear that nondiscriminatory employer actions occurring subsequent to the filing of a discrimination complaint will rarely even be relevant as circumstantial evidence in favor of the employer." *Chuang,* 225 F.3d at 1129 (quoting *Lam v. University of Hawaii,* 40 F.3d 1551, 1561 n.16 (9th Cir.1994).

Such is the case here.

Defendants attempt to deflect these multiple age-discriminatory comments by arguing they are but stray remarks. Defts' Memo at 11. While it is true that "The Ninth Circuit has held a 'stray remark' that is 'uttered in an ambivalent manner and [is] not tied directly to [the plaintiff]'s termination is insufficient to create an inference of discriminatory motive,'" *Hartung v. Cae Newnes, Inc.,* 229 F. Supp. 2d 1093, 1100 (D. Or. 2002) (*quoting Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir.1990)), the pervasive nature of the reference to Mr. Roy as "The old guy"; referring to him as, "He's old. Check to see he's okay"; and asking "When are you going to retire? You're getting old"; "We need to get younger guys in here"; and "I gotta get rid of Jack. He's too old;" are far from isolated "stray remarks. This latter statement is directly related to the termination decision. "When decision-makers make discriminatory remarks 'regarding assignments, promotions, or policies ... the remarks [are] certainly relevant and, along with other substantial evidence, create[ ] a strong inference of intentional discrimination.'" *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.,* 927 F. Supp. 2d 1030, 1053 (D. Or. 2012) (*quoting Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1477 (9th Cir.1995)).

The pervasive nature of the comments goes way beyond the concept of an occasional "stray remark" that can be ignored. The evidence of discriminatory comments, including statements by persons involved directly in the termination decision, reflected a distinct discriminatory attitude, and constitutes direct evidence of discriminatory animus. *See Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1096 n.5 (3d Cir. 1995).

In any event, *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000), teaches that "Understanding the meaning of a word or statement often requires examining various factors "including context, inflection, tone of voice, local custom, and historical usage." The Court explained that "The written record at summary judgment or on appeal – in its black and white sterility – is therefore ill-suited to inform a nuanced understanding of the meaning of statements reflecting discriminatory intent. Failure to recognize this principle has made the "stray remarks" label particularly dangerous at summary judgment, where affidavits supplant live testimony and a jury is prevented from fulfilling its traditional role in "making credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts." *Id. at 150* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### 3.    Plaintiff's Indirect Evidence is Sufficient to Deny Defendants' Motion

In arguing that plaintiff has not come forth with indirect evidence of discrimination, defendants repeat their incorrect assertion that plaintiff must show he was replaced by a substantially younger person. Defts' Memo at 12. That contention is shown above to be inaccurate and misplaced given that plaintiff had filed a complaint of age discrimination before defendants installed a similarly aged individual to take on some of Roy's previous duties.

Indeed, defendants' only argument is to attempt to discount the repeated age-discriminatory comments by contending they could have had different meanings. This argument is an admission that inferences to be drawn from the discriminatory comments is a question of fact reserved for resolution by a jury. The argument also demonstrates that, with all inferences resolved in favor of the nonmoving party, plaintiff here, defendant's motion cannot succeed.

Even if defendants can image and urge a nondiscriminatory reason, it is to no avail because they are not entitled to the benefit of competing inferences. "It is not the province of a court to spin such evidence in an employer's favor when evaluating its motion for summary judgment. To the contrary, all inferences must be drawn in favor of the non-moving party." *Chuang, supra,* 225 F.3d at 1129.[13]

### 4.    The Evidence of Pretext is Compelling

Even if plaintiff's direct evidence of age bias were not sufficient, his evidence of pretext is compelling. In addition to the repeated discriminatory age-related comments, the facts and circumstances identified in this record and summarized above are more than sufficient to provide a jury with reasonable bases to conclude that the stated reason for plaintiff's termination is pretext. Moreover, several other circumstances suffice to demonstrate a serious question of fact over pretext, including the following:

•       Culver failed even to question plaintiff Roy before making the decision to terminate. He interviewed no one and refused to give Mr. Roy a fair opportunity to respond to his allegations. Such a sloppy investigation is evidence of pretext. *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 407 (7th Cir. 2007), *aff'd on other grounds,* 128 S. Ct. 1951 (2008) (in Title VII and Section 1981 case, the failure of the decision-maker to even investigate and question the plaintiff about allegations made by a fellow employee evidenced pretext); *Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 414-415 (6th Cir. 2008) (Title VII retaliation case involving failure to thoroughly investigate old allegation evidenced that decision maker "did not

---

[13] See also *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000), quoted above.

**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

make a reasonably informed and considered decision before terminating plaintiff"); *Heaton v. The Weitz Co., Inc.,* 534 F.3d 882, 890-891 (8th Cir. 2008) (reasonable jury could believe investigator was biased and investigation was "cursory and indifferent, failing to demonstrate a good-faith effort to comply with Title VII"); *Fonseca v. Sysco Food Services of Arizona, Inc.,* 374 F.3d 840, 850 (9th Cir. 2004) (plaintiffs claim in Title VII case – that it would have been ridiculous for employer to conclude that he would intentionally damage goods in front of four supervisors – was supported in part by fact of no investigation of the incident).[14]

•    The repeated instances of discriminatory age-related comments, described herein, illustrate an atmosphere of discrimination and age-bias, regarding by whom they were made. See *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1210 (2d Cir. 1993) ("The non-decisionmaker testimony was clearly probative and admissible under Fed.R.Evid. 401 * * * because [it] showed the pervasive corporate hostility towards Malarkey and supported her claim that she did not receive a promotion due to her employer's retaliatory animus.").

•    The evidence making out plaintiff's prima facie case is relevant as well to the question of pretext. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993). Those facts and circumstances described above contribute to the serious and, for defendants the insurmountable, material issues of fact that must be reserved for the jury.

•    Plaintiff's evidence of pretext is *specific and substantial,* despite defendants' protestations to the contrary. Regardless, under an appropriate reading of the law, it is *in*correct

---

[14] While the scope of an adequate investigation may be debated, some investigations, such as the utter lack of one here, are so improper that a jury can find that the employer could not have held an honest good-faith belief. *See Smith v. Chrysler Corp.,* 155 F.3d 799, 807-08 (6th Cir. 1998); *EEOC v. Sears Roebuck & Co.,* 243 F.3d 846, 850-854 (4th Cir. 2001).

**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

to categorize one form of evidence over another. *Davis v. Team Elec. Co.,* 520 F.3d 1080, 1091

(9th Cir. 2008) ("In *Cornwell* we relied on the Supreme Court's decision in *Costa* to conclude

that 'in the context of summary judgment, Title VII does not require a disparate treatment

plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff

who relies on direct evidence.'") (*quoting Cornwell v. Electra Cent. Credit Union,* 439 F.3d

1018, 1030 (9th Cir.2006) and *citing Desert Palace, Inc. v. Costa,* 539 U.S. 90, 99-100 (2003)

(finding direct and circumstantial evidence equally sufficient) and *McGinest v. GTE Serv. Corp.,*

360 F.3d 1103, 1112 (9th Cir. 2004) ("circumstantial and direct evidence should be treated

alike").[15]

• Finally, defendants overemphasize the so-called same actor inference. Defts'

Memo at 15, 16. That permissible inference applies when the same actor hires an individual

within a protected classification and within a short time terminates the same person. It is

inapplicable in this case because the evidence demonstrates pervasive direct evidence of

discrimination as shown by the multiple, pervasive comments about plaintiff's age by those

involved in the decision to terminate, among other incidents. The permissible inference is also

negated by the fact that Culver admitted that he was not the decision maker in promoting Roy.

---

[15] "Indeed, this 'specific and substantial' standard 'is tempered by our observation that a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one.'" We have repeatedly held that it should not take much for a plaintiff in a discrimination case to overcome a summary judgment motion. 'This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *France v. Johnson,* 795 F.3d 1170, 1175 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015).

**CRISPIN EMPLOYMENT LAW PC**
1834 SW 58th Avenue, Suite 200
Portland, Oregon 97221
Telephone: 503-293-5770

Culver Tr. 47:14-18.[16]

Moreover, its application should be severely limited, if it is ever applied at the Rule 56

state. In *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 572–74 (6th Cir. 2003), the court

refused its application. "We therefore reject the idea that a mandatory inference must be applied

in favor of a summary-judgment movant whenever the claimant has been hired and fired by the

same individual. Such an approach strikes us as being contrary to the Supreme Court's opinion in

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

('Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge, whether he is ruling on a

motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor.')."

## V. CONCLUSION

For the foregoing reasons, defendants' motions should be denied and the matter set for

trial by a jury.

DATED December 23, 2019.

Crispin Employment Law pc

By:   /s/Craig A. Crispin
      Craig A. Crispin, OSB No. 824852
      crispin@employmentlaw-nw.com
      Ashley A. Marton, OSB No. 171584
      ashley@employmentlaw-nw.com
      Of attorneys for plaintiff Roy

---

[16] If considered at all, it "is simply evidence like any other and should not be afforded presumptive value." *Waldron v. SL Indus., Inc.,* 56 F.3d 491, 496 n.6 (3d Cir.1995).

CERTIFICATION

Pursuant to L.R. 7-2(b), it is certified that this brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 7,517 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

CRISPIN EMPLOYMENT LAW PC

By:___/s/Craig A. Crispin_____
      Craig A. Crispin, OSB No. 824852
      crispin@employmentlaw-nw.com
      Ashley A. Marton, OSB No. 171584
      ashley@employmentlaw-nw.com
      Of attorneys for plaintiff Roy